Day, J.
The plaintiff, Eli W. Pepple, as guardian of John Pepple, an imbecile person, brings this action against David E. Pepple, Ella M. Pepple and Loa Curtis, defendants, to vacate and set aside certain conveyances of real estate made by John Pepple to David E. and Ella M. Pepple, in November, 1891, and February, '1893, on the grounds of incapacity on the part of John Pepple to contract,and of coercion of defendant Pebble - by which the conveyances were compelled. Loa Curtiss is made a defendant because she claims a lien on the said real estate by virtue of a mortgage from her co-defendants to her. Issue is joined on the claims made in the petition, by an answer of defendants Pepple, in which they assert that John Pepple, at the time of the transactions, and fora time afterward, was not imbecile, but was possessed of judgment and capacity sufficient to properly transact the business which he did, in good faith, uninfluenced and uncoerced by any one. That the transactions were proper ones, made upon good and proper considerations, and wronging no person, least of all the grantor named in said conveyances, and defendants ask that the conveyances be sustained.
The most of the facts of the transactions are undisputed —all of them, in fact, except the incapacity of John Pepple to do business, and that he was coerced and controlled in the matter by David E. and Ella M.‘ Pepple. These two alleged facts are in dispute. The undisputed facts are: In October, 1891, John Pepple, who before that time had been duly adjudged an imbecile and was under guardianship as an imbecile, was by the court of common pleas of the county, in a matter pending therein, found to be sane, and was discharged and restored from such disability. Soon thereafter, in November, 1891, he conveyed a forty-acre tract, his *45 homestead, to his son David E. Pepple, and also leased to 'David E. a sixty-six acre tract for a term during the lifetime of the old gentleman. As consideration for this conveyance and lease the grantor was to be furnished a comfortable home, cared for and supported during his natural life, and decently interred at his death. In February, 1893, the sixty-six acres, being the same tract leased to David E., was conveyed to Eilen M. Pepple, wife of David E,, for an expressed consideration of $1,650; $450 of which was paid in cash, and notes bearing interest to the amount of $1,200 for the balance were executed and delivered as a consideration for the conveyance. Before these transactions, and before the appointment of a guardian, John Pepple had made advancements in various amounts to some of his children other than David E., and had become liable, as surety, for others, for the payment of money, and the cash payment received for the conveyance to Ella M. Pepple, was required and used in payment of a judgment against a son-in-law for wbom Mr. Pepple had so become liable as surety. Since November, 1891, David E. has been in possession of the two tracts, receiving and enjoying the rents and profits thereof, and the old gentleman has been furnished a home with defendants, and has been supported and properly cared for by them. Since 1894 he has become entirely imbecile and helpless, wholly incapable of caring for or helping himself in any way, and has been, is now, arid so long as he lives will be, a serious charge and burthen on defendants. This plaintiff was appointed guardian in May, 1894, and is now and since then has been, the duly appointed, qualified and acting guardian, and brings this suit to set aside the said conveyances made by the old gentleman to defendants, and also for an accounting by defendants with him for the rents and profits derived from the farm.
If it shall appear that the transactions by which the lands were conveyed were invalid, by reason of want of capacity *46 on the part of the grantor to make them, or, because of coercion on the part of defendants, then an accounting will of course become necessary; but otherwise if the conveyances are sustained. So, in the first place, the single question is presented: Had John Pepple sufficient capacity t@ transact the business, and did he transact it in freedom and unrestraint? The plaintiff has the affirmative side of this issue, and the burden is on him to establish it affirmatively, by the weight of the evidence. For that reason the testimony has been produced and submitted to the court, and it is but fair to say there is a serious conflict in it. On the question of capacity, the witnesses were 1'imited to six on a side, and they all testified, sincerely and honestly, wo think, according to their various notions and beliefs on the subject. Notions and beliefs of a witness, however, as evidence of a fact or condition, are only valuable when formed and based upon intelligent and careful observation under favorable opportunities, and utterly without value or weight unless it appears that the notice taken was careful and judicious and under favorable conditions. Some of these witnesses were interested in the results of the litigation. Some were very general and casual in their observations and opinions, while others were disinterested, entirely so, and having regard for their fair reputation as professional men, were of necessity required to very carefully observe and note the precise condition of the old gentleman’s mind at the precise time of the transaction, with a view of fairly and properly transacting important business for him in a way that would be both lawful and right. To this last named class of testimony we are disposed to give controlling influence in determining the question before us. Very few of the witnesses on either side had occasion to more than casually notice the old gentleman’s condition of mind. None, perhaps, except the gentlemen1 who were called upon to advise with him and to prepare the legal documents nec *47 essary to carry into effect his wishes in regard to the matter. All noticed he was forgetful — lived more in the past than the present, as most old people do. That he could not remember readily, and sometimes repeated quotations and statements over and over again. All these things are, perhaps, evidence of senility or approaching senility, but they alone do not evidence total absence of capacity. They do evidence impairment of mental forces, but not total absolute wreck, and may all very well exist, and the old gentleman still be possessed of sufficient capacity to make such proper disposition of his property as must be upheld. The rule in this case, and all similar cases, I imagine, will not require as high degree of judgment and sense, as if the contract was with strangers or persons not of his immediate family, or was of an adversary character. All of these elements are absent in this case, and, in effect, to all intents and purposes, John Pepple was making a final disposition of his estate, as if by will, and if he had what is known in law as “testamentary capacity,” that would be sufficient. It is a general rule, of general, if not universal, application, that a person having sufficient mind to know and comprehend the extent and value of his property, and the names and rights of his children or those who are naturally dependent on and entitled to his bounty, such person-has testamentary capacity, and may properly dispose, finally, of his estate, and any disposition he may see fit to make, if it is his free act, will be sustained.
Having reference to the proofs submitted, we regard John Pepple, at the time of the conveyances, as having had even more than testamentary capacity. After the removal of his disability and discharge from guardianship, in October, 1891, he seemed to rally all his waning faculties, and to become alive to the exact requirements of the situation. He not only knew the extent of his estate and the names and rights of all his children, but he was able to recall the fact *48 that part of them had been provided for, in the way of advancements, and that certain other ones were entitled to be provided for as well; and one of the purposes he had in view, supplying a motive for his action, appeared to be to equalize his children in his estate, to see to it while he might, that all those who were dependent on his bounty were properly made participators in that bounty. This seemed especially true of the conveyance of November,1891. At about the time that conveyance was made,' he also made a will giving the sixty-six acres to his children and grandchildren who had not before that time received advancements. The conveyance of the sixty-six acres in February, 1893, was in a sense compelled by his surroundings, and seemed to be made necessary because of a judgment for a considerable sum, rendered against his son-in-law, and upon which he was surety. He was required to meet and discharge it, and the only property, he had, available for its payment, was the sixty-six acres. He had capacity, so the evidence is, to intelligently discuss the entire situation and to suggest the remedy by a sale of that particular tract to Ella M. Pepple. He obtained a fair price; considering the encumbrance of a lease for his life time to his son, David E. Pepple. In fact, the entire transaction, from beginning to end, impresses- us as being most judicious and proper, and we have been unable to discover anything savoring of imbecility, coercion or undue influence in it. The great weight of the evidence is, we think, to the effect that John Pepple, in the matter of conveying real estate to David E. and Ella M. Pepple, had both capacity and freedom to act. And we therefore find for the defendants.
James A. Bope, J. Blackford & Byal, for Plaintiff.
Shaffer & Shaffer, Pendleton & Whitely, for Defendants.
Plaintiff’s petition is dismissed,and he is required to pay all costs.